# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GLOBALTAP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.  1:18-cv-05383 |
| PETERSEN MANUFACTURING CO. INC., | ) | |
| CHRIS PETERSEN, MIKE SIEMER, | ) | JURY TRIAL DEMANDED |
| W.W. GRAINGER, INC., ZORO TOOLS, INC, | ) | |
| PARK N' POOL, INC., NEOBITS, INC., AND | ) | |
| CAREFORDE SAFETY, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PETERSEN DEFENDANTS'
## ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Petersen Manufacturing Co. Inc. ("PMC"), Chris Petersen and Mike Siemer (collectively, the "Petersen Defendants"), for their answer, affirmative defenses and Counterclaim to Plaintiff's Complaint, state as follows:

### The Parties

1.    GlobalTap was founded by Daniel H. Whitman ("Whitman") "to provide people with a more innovative, and compelling way to connect with each other through easier access to clean, free drinking water." GlobalTap is a Michigan limited liability company with its principal place of business located at 18075 Mt. Zion Rd., Galien, Michigan. GlobalTap does substantial business in Illinois, including in Cook County, Illinois.

**ANSWER:**    The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

2.    Whitman is a Michigan citizen. Whitman is the only member of GlobalTap.

**ANSWER:**    The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

1

3.      Petersen is an Iowa corporation with its principal place of business at 2471 Hwy. 30, Denison, Iowa. According to Petersen's website, "Petersen Manufacturing Site Furnishings is a nationally recognized leader in the production of high-quality precast concrete site amenities" and its "concrete products are manufactured in Denison, Iowa, and have representation in every state, Canada, Puerto Rico, Hong Kong, and Mexico by authorized Petersen representatives." https://www.petersenmfg.com/about.asp (accessed on July 24, 2018).

**ANSWER:**      The Petersen Defendants admit the allegations in this paragraph.

4.      C. Petersen is, upon information and belief, an Iowa citizen.

**ANSWER:**      The Petersen Defendants admit the allegations in this paragraph.

5.      Siemer is, upon information and belief, an Iowa citizen.

**ANSWER:**      The Petersen Defendants admit the allegations in this paragraph.

6.      Grainger is an Illinois corporation with its principal place of business in Lake Forest, Illinois.

**ANSWER:**      The Petersen Defendants admit the allegations in this paragraph.

7.      Zoro is a Delaware corporation with its principal place of business in Buffalo Grove, Illinois.

**ANSWER:**      The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

8.      Upon information and belief, Park n' Pool is a Virginia corporation with its principal place of business in Lexington, Virginia.

**ANSWER:**      The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

9.      Upon information and belief, Neobits is a California corporation with its principal place of business in Santa Clara, California.

**ANSWER:**      The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

302394823v2 1012263

10.     Careforde is a Delaware corporation with its principal place of business in Chicago, Illinois.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), which grants the district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . and trademarks," and 28 U.S.C. § 1367, which provides for "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

**ANSWER:**     The Petersen Defendants admit that this Court has subject matter jurisdiction over the patent and trademark claims asserted in Plaintiff's complaint, but otherwise deny the allegations in this paragraph and deny that the Court has subject matter jurisdiction over the state law claims.

12.     This Court has personal jurisdiction over Petersen pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(a) and (b) because, among other things, Petersen has transacted business in Illinois, including but not limited to conducting business with Illinois companies and companies operating in Illinois, including GlobalTap, made or performed a contract within Illinois, and committed tortious acts in Illinois. Petersen, through its agents, attended meetings in Chicago with GlobalTap to discuss the manufacture of GlobalTap products. Petersen has sold and continues to sell products infringing on GlobalTap's intellectual property within Illinois.

**ANSWER:**     The Petersen Defendants deny that this Court has personal jurisdiction over PMC and therefore deny the allegations in this paragraph.

13.     This Court has personal jurisdiction over C. Petersen pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(a) and (b) because, among other things, C. Petersen is president of Petersen and has transacted business on Petersen's behalf with Illinois companies and companies operating in Illinois, including GlobalTap.

**ANSWER:**     The Petersen Defendants deny that this Court has personal jurisdiction over C. Petersen and therefore deny the allegations in this paragraph.

3

14.     This Court has personal jurisdiction over Siemer pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(a) and (b) because, among other things, Siemer is a vice president of Petersen and has conducted business on Petersen's behalf with Illinois companies and companies operating in Illinois, including GlobalTap. Siemer traveled to Chicago to meet with Whitman to discuss Petersen manufacturing GlobalTap's products.

**ANSWER:**     The Petersen Defendants deny that this Court has personal jurisdiction over Siemer and therefore deny the allegations in this paragraph.

15.     This Court has personal jurisdiction over Grainger pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(b), because it is an Illinois corporation with its principal place of business in Illinois.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

16.     This Court has personal jurisdiction over Zoro pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(b), because its principal place of business is located in Illinois.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

17.     This Court has personal jurisdiction over Park n' Pool pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(a), because it has transacted business in Illinois by virtue of its advertising and sales of products, including products marketed as GlobalTap products, to individuals and entities located in Illinois.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18.     This Court has personal jurisdiction over Neobits pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(a), because it has transacted business in Illinois by virtue of its advertising and sales of products, including products marketed as GlobalTap products, to individuals and entities located in Illinois.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

302394823v2 1012263

19.     This Court has personal jurisdiction over Careforde pursuant to Federal Rule of Civil Procedure 4 and 735 ILCS 5/2-209(b), because its principal place of business is located in Illinois.

**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

20.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400, because at least three Defendants are located in this district and a substantial portion of the facts giving rise to this claim occurred in this district. The initial negotiations between GlobalTap and Petersen occurred in Chicago, Illinois and involved Petersen representatives, including Siemer, traveling to Chicago to meet with Whitman. Further, Grainger, Zoro, and Careforde are located in Cook County, Illinois and purchased infringing products from Petersen and subsequently marketed and sold those infringing products to others.

**ANSWER:**     The Petersen Defendants deny that venue is proper in this District and therefore deny the allegations in this paragraph.

### Factual Background

21.     GlobalTap was founded in 2008 with the goal of providing people with easy access to clean, free water in cities, schools, and communities around the world.

**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

22.     In 2009, Whitman, along with Anastasios Karahalios ("Karahalios") and Andrew Burroughs ("Burroughs"), developed a design for a free-standing outdoor water bottle filling station. At the time, there were no similar designs on the market.

**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

23.     On December 14, 2009, Whitman, Karahalios, and Burroughs filed for a design patent under U.S. Application No. 29/351,948. The patent issued on March 15, 2011 as Patent No. D634, 394 S ("'394 Patent"). The '394 Patent identified one claim, which was for "[t]he ornamental design for a water bottle fountain, as shown and described." See '394 Patent, attached hereto as Exhibit A.

5

**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

24.     The design depicted a free-standing water bottle filling station, consisting of a vertical base ending in a hook or cane shape, under which a water bottle may be placed vertically to be filled:



**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

25.     The '394 Patent was assigned by all three inventors to GlobalTap on February 4, 2013. GlobalTap is the exclusive owner of all rights, title, and interest in the '394 Patent, and has the right to bring this suit to recover damages for any current or past infringement.

**ANSWER:**          The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of this paragraph.  The Petersen Defendants deny the allegations in the second sentence of this paragraph.

26.     On February 1, 2011, Whitman, Karahalios, and Burroughs filed for a separate design patent under U.S. Application No. 29/384,581. The patent issued on October 4, 2011, as

6

Patent No. D646, 348 S ("'348 Patent"). The '348 Patent identified one claim, which was for "[t]he ornamental design for a water bottle fountain with side bubbler, showing our new, original and ornamental design." See '348 Patent, attached hereto as Exhibit B.

**ANSWER:** The Petersen Defendants deny that Whitman, Karahalios and Burroughs were the inventors or creators of the design that is the subject of the patent referred to in this paragraph and therefore deny the validity of the '348 Patent. The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of all other allegations in this paragraph.

27. The design depicted a free-standing water bottle filling station, consisting of a vertical base ending in a hook or cane shape, under which a water bottle may be placed vertically to be filled. Attached to the vertical base was a traditional-style water fountain protruding outward, from which individuals may drink without a water bottle:



**ANSWER:** The design depicted in the '348 Patent speaks for itself. The Petersen Defendants deny that Whitman, Karahalios and Burroughs were the inventors or creators of the design in the '348 Patent and therefore deny the validity of the '348 Patent claimed to be owned by GlobalTap. The Petersen Defendants deny all other allegations in this paragraph.

302394823v2 1012263

28.     The '348 Patent was assigned by all inventors to GlobalTap on February 4, 2013. GlobalTap is the exclusive owner of all rights, title, and interest in the '348 Patent, and has the right to bring this suit to recover damages for any current or past infringement.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

29.     With the development of its patented designs, GlobalTap also developed and began using various service marks. These include the word mark "GLOBALTAP" ("Word Mark") as well as a mark consisting of "GLOBALTAP" followed by a water droplet ("Water Drop Mark"), as depicted below:

**GLOBALTAP** ●

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

30.     GlobalTap first used the Word Mark and the Water Drop Mark in May, 2008. The Water Drop Mark was first used in commerce on December 31, 2009, while the Word Mark was first used in commerce on September 30, 2011.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

31.     GlobalTap has since obtained registrations for each. The Water Drop Mark was registered on July 21, 2015, under Registration No. 4,775,089. The Word Mark was registered on March 22, 2016, under Registration No. 4,920,350.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

32.     In late 2010, GlobalTap approached Petersen to discuss Petersen manufacturing GlobalTap's designs. GlobalTap identified Petersen as a potential manufacturer because of its reputation and history producing other outdoor fixtures, including benches, steel garbage cans, and concrete fountains.

302394823v2 1012263

**ANSWER:**    The Petersen Defendants admit the allegations in the first sentence of this paragraph.  The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph.

33.    Before beginning negotiations, Petersen signed a "Confidential Disclosure Agreement," in which Petersen agreed it "will not utilize the INFORMATION beyond the PURPOSE without first obtaining the written consent of the DISCLOSING PARTY." The "Purpose" was defined as exploring "their mutual interests in [GlobalTap's] project concerning distribution and access to water." The "Information" covered by the agreement expressly included GlobalTap's prototypes and designs.

**ANSWER:**    The Petersen Defendants admit that PMC and GlobalTap LLC entered into a Confidential Disclosure Agreement (CDA) in 2010, the terms for which speak for themselves. Except as expressly stated in the CDA, the Petersen Defendants deny all other allegations in this paragraph.

34.    Whitman met with Rick Carstensen and Siemer in Chicago at GlobalTap's designer's office. At the meeting, Whitman provided Petersen with GlobalTap's designs, as well as a prototype. Petersen then took the information to their Iowa plant to provide recommendations on production.

**ANSWER:**    The Petersen Defendants admit there was a meeting attended by Rick Carstensen, Mike Siemer and Daniel Whitman at IDEO in Chicago in 2010, but deny all other allegations in this paragraph.

35.    Following Petersen's review of the designs and prototype, GlobalTap and Petersen entered into an oral contract for Petersen to manufacture GlobalTap's products. Pursuant to the terms of the agreement, Petersen would be GlobalTap's exclusive manufacturer. GlobalTap would pay Petersen up front per unit manufactured. Petersen would provide a two-year warranty on all products manufactured.

**ANSWER:**    The Petersen Defendants admit that PMC and GlobalTap entered into an oral agreement in 2010 for PMC to manufacture certain fountain products and that as part of this

9

Agreement GlobalTap agreed to pay PMC up front for each unit manufactured. PMC denies all other allegations in this paragraph.

36. GlobalTap, in turn, would sell the units for double what Petersen charged for their manufacture.

**ANSWER:** The Petersen Defendants admit that as part of the oral agreement between PMC and GlobalTap, PMC agreed it would sell the fountain products at issue for double the price that GlobalTap agreed to pay PMC up front for manufacturing the fountains.

37. Upon reaching the oral agreement, Whitman began talking with Siemer about putting the arrangement between GlobalTap and Petersen in writing. Petersen offered to prepare an agreement, but no draft ever came. The companies continued to operate under the oral agreement.

**ANSWER:** The Petersen Defendants admit there is no written agreement between PMC and GlobalTap LLC other than the CDA. The Petersen Defendants deny all other allegations in this paragraph.

38. Sometime later, Petersen raised the idea to GlobalTap of trying to sell some of GlobalTap's fountains to Petersen's existing customers. GlobalTap agreed to permit Petersen to do so on the following terms:

   a. Petersen could not advertise the fountains;

   b. 50 percent of all profits from sales by Petersen would go to GlobalTap;

   c. Petersen would provide to GlobalTap an accounting of all units sold;

   d. GlobalTap would be included in any contract with distributors and provided an opportunity to review the terms.

**ANSWER:** The Petersen Defendants admit that GlobalTap LLC authorized PMC to sell certain fountains to PMC customers, but deny all other allegations in this paragraph.

39. In addition to the above, GlobalTap informed Petersen that any manuals for the products must include GlobalTap's name and not Petersen's, and include GlobalTap's contact information.

302394823v2 1012263

**ANSWER:**    The Petersen Defendants state that GlobalTap requested that any manuals for fountains with GlobalTap's name on them include GlobalTap's name and not PMC's name and also include GlobalTap's contact information, but the Petersen Defendants deny all other allegations in this paragraph.

40.    The rationale is simple. GlobalTap was very concerned about its image in the marketplace and wanted to maintain control over to whom and how its products were sold, as well as to ensure any product issues were properly resolved.

**ANSWER:**    The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

41.    As Petersen began to ramp up production of GlobalTap's product, complaints began to come in from customers. Customers complained of rusting on different parts of the fountains, scratches, missing parts, sticking buttons, and other issues.

**ANSWER:**    A few minor complaints were made by a few customers to whom fountains with GlobalTap's name on them were sold.  The Petersen Defendants deny all other allegations in this paragraph.

42.    GlobalTap attempted to address the issue with Petersen in hope of maintaining the relationship, given the significant effort associated with identifying and reaching an agreement with a new manufacturer. Around this time, GlobalTap also again requested to put the parties' agreement in writing.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

43.    The problems with Petersen's manufacturing persisted. To compound matters, Petersen failed to follow through on its agreement to a two-year warranty. While it stated it would address the customer complaints, it never did.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

44.    Petersen's poor-quality products and failure to address customer concerns damaged GlobalTap's reputation and caused it to lose various business opportunities.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

45.     Sometime later, GlobalTap heard through industry sources that Petersen was signing contracts and selling GlobalTap products to distributors without GlobalTap's consent or authorization, and without paying GlobalTap its agreed upon share of revenues.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

46.     Upon hearing this, GlobalTap immediately reached out to Petersen, through Siemer, and instructed Petersen to stop contracting to distribute GlobalTap products without GlobalTap's permission. Petersen, however, ignored the instruction. Soon, GlobalTap began to see its products advertised by several distributors with whom GlobalTap had never contracted.

**ANSWER:**     The Petersen Defendants deny the allegations in the first sentence of this paragraph.  The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph.

47.     GlobalTap continued to attempt to memorialize its agreement with Petersen, recognizing the significant cost associated with starting over with a new manufacturer. Petersen, recognizing the situation, continued to string GlobalTap along by continuing discussions of a written agreement. Petersen's actions, though, were merely to delay while it continued to manufacture and sell GlobalTap products without permission.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

48.     GlobalTap also requested an accounting of all GlobalTap fountains sold and to whom they were sold. GlobalTap requested copies of any agreements to distribute GlobalTap fountains. It also demanded its portion of the revenue from all such sales. Petersen refused. At the same time, Petersen continued to neglect its warranty issues.

**ANSWER:**     The Petersen Defendants admit that GlobalTap requested copies of invoices regarding sales of fountains and that PMC provided copies of the invoices to GlobalTap and its attorney.  The Petersen Defendants deny all other allegations in this paragraph.

49.     Petersen continues to market GlobalTap products, including selling fountains to major distributors such as Grainger. When confronted, Petersen stated that it would continue to sell GlobalTap's products and, if necessary, would simply remove the GlobalTap name.

302394823v2 1012263

**ANSWER:** The Petersen Defendants admit that PMC has sold certain fountains to Grainger, but denies any liability for such sales and denies that PMC is continuing to sell fountains to Grainger and denies all other allegations in this paragraph.

50. At the same time, Petersen stopped fulfilling orders placed by GlobalTap.

**ANSWER:** The Petersen Defendants admit that PMC stopped fulfilling orders by GlobalTap, but deny all other allegations in this paragraph.

51. The products sold by Petersen include the designs patented under the '394 Patent and the '348 Patent, among other GlobalTap designs. The products also include the Word Mark and the Water Drop Mark.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

52. For example, as of July 24, 2018, Grainger's website listed for sale the fountain with the design described in the '348 Patent, for a price of either $4,972 or $5,494 per unit:





A screenshot of Grainger's website as of July 24, 2018, is attached hereto as Exhibit C.

**ANSWER:**      The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

53.     The design is identical to or substantially indistinguishable from the design that is the subject of the '348 Patent and includes GlobalTap's Word Mark, Water Drop Mark, or both. The product comes up on Grainger's website by searching "globaltap."

**ANSWER:**      The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

54.     As of July 24, 2018, Grainger's website also listed for sale the fountain with the design described in the '394 Patent, for a price of $4,011 per unit:

GLOBAL TAP

Non-Refrigerated Free-Standing Bottle Filling Station, 1 Level, Front Push Button Dispenser Operatio

Item # 48WK09   Mfr. Model # GT1000   Catalog Page # N/A   UNSPSC # 48101710

Web Price ⓘ
$4,011.00 / each

This item requires special shipping, additional charges may apply.

One Time Delivery
Auto Reorder

1  ADD TO CART

+ Add to List

Shipping  Pickup

Ships from supplier to branch. Available for pickup on or before Thu. Jul 12.

CHICAGO Branch #139
Branch Info | Change

☆☆☆☆☆ Be the first to write a review

Shipping Weight 200.0 lbs.

How can we improve our Product Images?

Country of Origin USA | Country of Origin is subject to change.

Note: Product availability is real-time updated and adjusted continuously. The product will be reserved for you when you complete your order.
More

☐ Compare

14



A screenshot of the Grainger website as of July 24, 2018, is attached hereto as Exhibit D.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

55. The design is identical to or substantially indistinguishable from the design that is the subject of the '394 Patent and includes GlobalTap's Word Mark, Water Drop Mark, or both.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

56. Grainger sells additional designs developed by GlobalTap and that include GlobalTap's Word Mark, Water Drop Mark, or both.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

57. Upon information and belief, Grainger obtains the infringing products from Petersen. GlobalTap has not authorized, licensed, or otherwise consented to Grainger marketing or selling GlobalTap products or products including GlobalTap's marks, nor has it authorized Petersen to manufacture for or sell to Grainger GlobalTap products or products including GlobalTap's marks.

15

**ANSWER:** The Petersen Defendants state that certain fountains were sold to Grainger with GlobalTap's permission and approval, but the Petersen Defendants deny all other allegations in this paragraph.

58. GlobalTap's patented designs are also being sold by Park n' Pool, including the designs that are the subject of the '394 Patent and '348 Patent. Screenshots from Park n' Pool's website as of July 24, 2018, marketing the patented designs are attached hereto as Group Exhibit E.

**ANSWER:** The Petersen Defendants admit that a small number of fountains were sold to Park n' Pool with GlobalTap's permission and approval. The Petersen Defendants deny that GlobalTap has valid patents to the designs alleged. The Petersen Defendants lack knowledge or information sufficient to form a belief as to the truth of all other allegations in this paragraph.

59. The designs are identical to the designs that are the subject of the '394 and '348 Patents and include GlobalTap's Word Mark, Water Drop Mark, or both. The products are identified as GLOBAL TAP products on the website.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

60. Park n' Pool sells additional designs developed by GlobalTap and that include GlobalTap's Word Mark, Water Drop Mark, or both.

**ANSWER:** The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

61. Upon information and belief, Park n' Pool obtains the infringing products from Petersen. GlobalTap has not authorized, licensed, or otherwise consented to Park n' Pool marketing or selling GlobalTap products or products including GlobalTap's marks, nor has it authorized Petersen to manufacture for or to sell to Park n' Pool GlobalTap products or products including GlobalTap's marks.

16

**ANSWER:**     The Petersen Defendants admit that Park n' Pool obtained a small number of fountains from GlobalTap.   The Petersen Defendants deny all other allegations in this paragraph.

62.     Other entities selling unauthorized and counterfeit versions of GlobalTap's patented designs include, but are not limited to, the following:

a. Zoro (see Screenshots from July 24, 2018, attached hereto as Group Exhibit F);

b. Neobits (see Screenshot from July 24, 2018, attached hereto as Exhibit G);

c. Careforde (see Screenshot from July 24, 2018, attached hereto as Exhibit H).

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

63.     The designs for sale by each of the above-referenced companies include designs identical to the designs that are the subject of the '394 Patent and '348 Patent and include GlobalTap's Word Mark, Water Drop Mark, or both. In addition to the designs subject to the '394 Patent and the '348 Patent, each of the distributors identified herein sells various other designs developed by GlobalTap and purporting to be GlobalTap products. GlobalTap has not authorized the manufacture, sale, distribution, or promotion of any such products by any of the companies identified herein.

**ANSWER:**     The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

64.     Upon information and belief, each of the above-referenced companies obtains the infringing products from Petersen. GlobalTap has not authorized, licensed, or otherwise consented to the above-referenced companies marketing or selling GlobalTap products or products including the GlobalTap marks, nor has it authorized Petersen to manufacture for or to sell to the above-referenced companies GlobalTap products or products including GlobalTap's marks.

**ANSWER:**     The Petersen Defendants admit that PMC provided certain fountains to Grainger and Park n' Pool with GlobalTap's permission and approval.  The Petersen Defendants deny all other allegations in this paragraph.

65.     When confronted, Siemer told Whitman that Petersen is going to continue manufacturing the patented designs and other GlobalTap products, regardless of GlobalTap's objections.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.


66.     Petersen continues to manufacture and sell unauthorized versions of GlobalTap's patented designs and to make unauthorized use of GlobalTap's registered marks, despite GlobalTap making repeated requests for Petersen to cease and desist such production and sale. Most recently, on December 5, 2017, GlobalTap sent a cease and desist letter to Petersen, directed to C. Petersen. A copy of the December 5, 2017, letter is attached hereto as Exhibit I. The letter demanded that Petersen cease its unauthorized use of GlobalTap's registered marks. Petersen refused to comply.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.


67.     Petersen is knowingly violating GlobalTap's patents and registered marks. C. Petersen and Siemer have actively participated in Petersen's willful infringement of GlobalTap's intellectual property, as evidenced by Petersen's continued infringement despite C. Petersen and Siemer each personally having been informed of Petersen's unauthorized use.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.


### Injunctive Relief

68.     In various counts set forth below, GlobalTap requests preliminary and permanent injunctive relief.

**ANSWER:**     The Peterson Defendants admit that GlobalTap is asking for preliminary

and permanent injunctive relief but deny that GlobalTap is entitled to such relief.


69.     GlobalTap invested substantial resources in the development of its intellectual property, including the '394 Patent, the '348 Patent, the Word Mark, and the Water Drop Mark, as well as its other proprietary designs and brand goodwill. As such, GlobalTap has a legitimate business interest and clearly ascertainable right in need of protection.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.


70.     Defendants have infringed and continue to infringe on GlobalTap's intellectual property, and to use GlobalTap's name and designs to sell products unauthorized by GlobalTap. Absent the injunctive relief requested herein, GlobalTap will suffer irreparable harm. This

includes lost goodwill and reputational harm, as well as lost business opportunities, which cannot adequately be compensated through money damages.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

71.     Given the egregious and willful nature of the infringement by Petersen, and its deliberate sale of counterfeit products to distributors, including Grainger, Zoro, Park n' Play, Neobits, and Careforde, each of whom sell such counterfeit products to the public, GlobalTap is likely to be successful on the merits of each claim in which injunctive relief is sought.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

72.     To deny GlobalTap injunctive relief is to permit Defendants to continue selling counterfeit products under GlobalTap's name. Further, GlobalTap does not even know all of the distributors to whom Petersen has sold or is selling the infringing products, making it otherwise impossible for GlobalTap to protect itself in the marketplace from harm caused by the infringing products.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

73.     Such injunctive relief, which would prevent the manufacture and sale of counterfeit products, is in the public interest in that it will remove unauthorized, shoddy products from the marketplace and deter future infringers from abusing the intellectual property rights of GlobalTap and others.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

**COUNT I – INFRINGEMENT OF THE '394 PATENT
(PETERSEN, C. PETERSEN, SIEMER)**

74.     GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**     The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 74.

75.     GlobalTap is the owner of the '394 Patent, including all rights to enforce the patent, by virtue of assignment to GlobalTap by all inventors executed on February 4, 2013.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

76.     Petersen has infringed the '394 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by manufacturing and selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '394 Patent.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

77.     Upon information and belief, third parties, including Petersen's customers, have infringed and continue to infringe the '394 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '394 Patent.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

78.     Petersen has induced infringement, and continues to induce infringement, of the '394 Patent, in violation of 35 U.S.C. § 271(b). Petersen actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '394 Patent by selling or otherwise supplying products that are identical to or substantially indistinguishable from the design subject to the '394 Patent, with the knowledge and intent that third parties will use, sell, or offer for sale the infringing products in the United States. Petersen knowingly encourages and facilitates the infringement by promoting the infringing products and advertising them for sale to its customers, including distributors intending to resell the products.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

79.     C. Petersen and Siemer actively, knowingly, and intentionally aided and abetted Petersen's infringement of the '394 Patent, in violation of 35 U.S.C. § 271(b). C. Petersen and Siemer were informed and aware of the '394 Patent and instructed or facilitated Petersen's manufacture and continued manufacture of products using the design subject to the '394 Patent for sale in the United States.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

80.     Petersen's continued infringement of the '394 Patent with actual knowledge of the '394 Patent is a willful violation of GlobalTap's patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

81.     GlobalTap has suffered and continues to suffer damages as a result of Petersen's continued and willful infringement of its patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

82.     GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

## COUNT II – INFRINGEMENT OF THE '394 PATENT
## (GRAINGER, PARK N' POOL, ZORO, NEOBITS, CAREFORDE)

83.     GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**     The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 83.

84.     GlobalTap is the owner of the '394 Patent, including all rights to enforce the patent, by virtue of assignment to GlobalTap by all inventors executed on February 4, 2013.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

85.      Grainger, Park n' Pool, Zoro, Neobits, and Careforde have infringed the '394 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '394 Patent.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

86.     GlobalTap has suffered and continues to suffer damages as a result of these Defendants' continued infringement of its patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

87.     GlobalTap presently lacks the ability to fully understand the scope of its damages because it lacks the any quantitative information regarding the total number of units sold by these Defendants and to whom the units were sold, along with other significant information.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

## COUNT III – INFRINGEMENT OF THE '348 PATENT
### (PETERSEN, C. PETERSEN, SIEMER)

88.     GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**    The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 88.

89.     GlobalTap is the owner of the '348 Patent, including all rights to enforce the patent, by virtue of assignment to GlobalTap by all inventors executed on February 4, 2013.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

90.     Petersen has infringed the '348 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by manufacturing and selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '348 Patent.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

91.     Upon information and belief, third parties, including Petersen's customers, have infringed and continue to infringe the '348 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '348 Patent.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

92.     Petersen has induced infringement, and continues to induce infringement, of the '348 Patent, in violation of 35 U.S.C. § 271(b). Petersen actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '348 Patent by selling or otherwise supplying products that are identical to or substantially indistinguishable from the design subject to the '348 Patent, with the knowledge and intent that third parties will use, sell, or offer for sale the infringing products in the United States. Petersen knowingly encourages and facilitates the infringement by promoting the infringing products and advertising them for sale to its customers, including distributors intending to resell the products.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

93.     C. Petersen and Siemer actively, knowingly, and intentionally aided and abetted Petersen's infringement of the '348 Patent, in violation of 35 U.S.C. §271(b). C. Petersen and Siemer were informed and aware of the '348 Patent and instructed or facilitated Petersen's

manufacture and continued manufacture of products using the design subject to the '348 Patent for sale in the United States.

**ANSWER:**     The Petersen Defendants deny the allegations in this.

94.     Petersen's continued infringement of the '348 Patent with actual knowledge of the '348 Patent is a willful violation of GlobalTap's patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

95.     GlobalTap has suffered and continues to suffer damages as a result of Petersen's continued and willful violation of its patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

96.     GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

## COUNT IV – INFRINGEMENT OF THE '348 PATENT
## (GRAINGER, PARK N' POOL, ZORO, NEOBITS, CAREFORDE)

97.     GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**     The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 97.

98.     GlobalTap is the owner of the '348 Patent, including all rights to enforce the patent, by virtue of assignment to GlobalTap by all inventors executed on February 4, 2013.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

99.     Grainger, Park n' Pool, Zoro, Neobits, and Careforde have infringed the '348 Patent, in violation of 35 U.S.C. §§ 271(a) and 289, by selling in the United States, without license or other authorization, products identical to or substantially indistinguishable from the design subject to the '348 Patent.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

100.    GlobalTap suffered and continues to suffer damages as a result of these Defendants' continued infringement of its patent rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

101.    GlobalTap presently lacks the ability to fully understand the scope of its damages because it lacks any quantitative information from these Defendants regarding the total number of units they have sold and the price at which the units were sold, along with other significant information.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

## COUNT V – LANHAM ACT
## (PETERSEN, C. PETERSEN, SIEMER)

102.    GlobalTap incorporates by references the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**     The Petersen Defendants adopt and incorporate their answers to paragraphs 1 through 73 above as and for their answer to paragraph 102.

103.    GlobalTap owns valid, protectable marks in the Word Mark and Water Drop Mark.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

104.    GlobalTap's water fountains also have a distinctive design. Two such designs are patented, as set forth above. GlobalTap, however, developed additional designs incorporating distinctive GlobalTap features and characteristics.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

105.    Petersen has used and continues to use the Word Mark and Water Drop Mark on products manufactured and sold in the United States, without license, consent, or other authorization. Petersen has used the Word Mark and Water Drop Mark in marketing, promoting, or advertising of the infringing products, including, but not limited to, by promoting the products as genuine GlobalTap products and including the GlobalTap name on the products, manuals, and marketing materials.

302394823v2 1012263

**ANSWER:** The Petersen Defendants admit that PMC used the GlobalTap Word Mark or Water Drop Mark on occasion, with permission from GlobalTap. The Petersen Defendants deny all other allegations in this paragraph.

106. Petersen's use of the Word Mark and Water Drop Mark is likely to confuse consumers because it is used in conjunction with GlobalTap's patented designs, as well as the other designs developed by GlobalTap, and Petersen was previously authorized to manufacture GlobalTap products.

**ANSWER:** The Petersen Defendants deny the allegations in this paragraph.

107. Petersen's use of GlobalTap's Word Mark and Water Drop Mark in conjunction with GlobalTap's designs amounts to counterfeiting, in that Petersen is producing identical or substantially indistinguishable products under the GlobalTap name without GlobalTap's license, consent, or authorization.

**ANSWER:** The Petersen Defendants deny the allegations in this paragraph.

108. Petersen has induced infringement, and continues to induce infringement, of the Word Mark and Water Drop Mark. Petersen actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the Word Mark and Water Drop Mark by selling or otherwise supplying products making unauthorized use of the Word Mark and Water Drop Mark, with the knowledge and intent that third parties will use, sell, or offer for sale the infringing products in the United States. Petersen knowingly encourages and facilitates the infringement by promoting the infringing products and advertising them for sale to its customers, including to distributors intending to resell the products.

**ANSWER:** The Petersen Defendants deny the allegations in this paragraph.

109. These include, but are not limited to, Grainger, Park n' Play, Zoro, Neobits, and Careforde, each of which markets and sells multiple products including GlobalTap's Word Mark and Water Drop Mark, without authorization or consent from GlobalTap for use of its registered marks. Each of these entities is selling counterfeit GlobalTap products, which are likely to confuse consumers and lead them to believe the products marketed and sold are authorized GlobalTap products.

**ANSWER:** The Petersen Defendants deny the allegations in this paragraph.

110. Peteresen's manufacture and sale of counterfeit products is willful. GlobalTap, on multiple occasions, informed C. Petersen and Siemer that Petersen must stop the unauthorized use of the Word Mark and Water Drop Mark to manufacture and sell products based upon

GlobalTap's designs, including sending a cease and desist letter. As evidenced by the continued presence of infringing product for sale through major distribution channels without GlobalTap's authorization, Petersen has made a conscious decision to disregard GlobalTap's rights in the Word Mark and Water Drop Mark.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

111.    Further, C. Petersen and Siemer willingly and knowingly participated in the manufacture and sale of products making unauthorized use of the Word Mark and Water Drop Mark, including by personally informing Whitman that Petersen would continue to manufacture GlobalTap's products without regard to GlobalTap's rights. C. Petersen and Siemer were each told to stop the unauthorized use of GlobalTap's Word Mark and Water Drop Mark, yet they personally directed Petersen to continue to manufacture and sell the infringing products.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

112.    GlobalTap has suffered substantial damages as a result of Defendants' unauthorized and counterfeit use of the Word Mark and Water Drop Mark, as well as its patented and distinct designs, including lost profits, lost business opportunity, and reputational harm.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

113.    GlobalTap's brand and reputation, in particular, have been damaged by the sale of shoddy counterfeit products, which do not meet GlobalTap's specifications.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

114.    GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

## COUNT VI – LANHAM ACT
## (GRAINGER, PARK N' POOL, ZORO, NEOBITS, CAREFORDE)

115.    GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**    The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 115.

116.     GlobalTap owns valid, protectable marks in the Word Mark and Water Drop Mark.

**ANSWER:**     The Petersen Defendants deny allegations in this paragraph.

117.     GlobalTap's water fountains also have a distinctive design. Two such designs are patented, as set forth above. GlobalTap, however, developed additional designs incorporating distinctive GlobalTap features and characteristics.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

118.     Grainger, Park n' Pool, Zoro, Neobits, and Careforde have used and continue to use the Word Mark and Water Drop Mark on products sold in the United States, without license, consent, or other authorization, and in relation to the marketing, promotion, or advertising of the infringing products, including, but not limited to, promoting the products as genuine GlobalTap products and including the Word Mark and Water Drop Mark on the products, manuals, and marketing materials.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

119.     This unauthorized use of the Word Mark and Water Drop mark is likely to confuse consumers because it is used in conjunction with GlobalTap's patented designs, as well as other designs developed by GlobalTap.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

120.     Grainger, Park n' Pool, Zoro, Neobits, and Careforde's use of GlobalTap's Word Mark and Water Drop Mark in conjunction with GlobalTap's designs amounts to counterfeiting, in that each of these Defendants is selling identical or substantially indistinguishable products under the GlobalTap name and including the Word Mark and Water Drop Mark without GlobalTap's license, consent, or authorization. These Defendants acted and are acting willfully in disregard of GlobalTap's rights.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

121.     GlobalTap has suffered substantial damages as a result of the unauthorized and counterfeit use of the Word Mark and Water Drop Mark, as well as its patented and distinct designs, including lost profits, lost business opportunity, and reputational harm.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

122.    GlobalTap's brand and reputation, in particular, have been damaged by the sale of shoddy counterfeit products, which do not meet GlobalTap's specifications.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

123.    GlobalTap presently lacks the ability to fully understand the scope of its damages because it lacks quantitative information regarding the total number of units these Defendants have sold and the price at which the units were sold, along with other significant information.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

## COUNT VII – BREACH OF CDA
## (PETERSEN)

124.    GlobalTap incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**    The Petersen Defendants adopt and incorporate their answers to paragraphs 1 through 73 above as and for their answer to paragraph 124.

125.    GlobalTap and Petersen executed a valid and binding contract when each side executed the CDA.

**ANSWER:**    The Petersen Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

126.    Under the CDA, GlobalTap provided Petersen access to its proprietary information, including designs and prototypes, to determine whether Petersen could manufacture GlobalTap's products.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

127.    The CDA limited Petersen's use of GlobalTap's information to further the purpose of determining whether the parties could work together in the manufacture and distribution of GlobalTap products.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

128.    The CDA expressly stated that it "will not carry with it any express or implied license under any intellectual property rights of the other."

28

**ANSWER:**    The Petersen Defendants admit that the CDA contained the quoted language, but state that the CDA should be read in its entirety.

129.    Petersen breached the CDA by using GlobalTap's intellectual property, including its designs and registered marks, to manufacture and distribute products based upon GlobalTap's intellectual property without GlobalTap's authorization or consent.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

130.    Petersen further breached the CDA by not returning GlobalTap's intellectual property and proprietary information to GlobalTap, including failing to return the prototype provided to Petersen by GlobalTap.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

131.    GlobalTap fully performed all of its obligations under the contract, including all conditions precedent.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph and state that GlobalTap failed to perform its obligations and conditions precedent by failing to pay amounts due to PMC.

132.    GlobalTap has suffered damages as a result of Petersen's breach, including ,but not limited to, lost profits.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

133.    GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

## COUNT VIII – BREACH OF ORAL OR IMPLIED CONTRACT
### (PETERSEN)

134.     GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**     The Petersen Defendants adopt and incorporate their answers to paragraphs 1 through 73 above as and for their answer to paragraph 134.

135.     GlobalTap and Petersen entered into a valid, binding oral or implied contract. Under the agreement, GlobalTap agreed to use Petersen as its exclusive manufacturer and to pay Petersen for the production and shipment of GlobalTap products. Petersen agreed to manufacture GlobalTap products sold by GlobalTap and to provide a two-year manufacturer's warranty.

**ANSWER:**     The Petersen Defendants admit that PMC and GlobalTap entered into an oral agreement in 2010 and that as part of this agreement GlobalTap authorized PMC to manufacture and sell certain fountains and GlobalTap agreed to pay PMC up front for the cost of manufacturing the fountains and PMC agreed to pay GlobalTap 50% of the revenues received from the sale of said fountains.  The Petersen Defendants deny all other allegations in this paragraph.

136.     The agreement did not grant Petersen any license or authorization to manufacture and sell GlobalTap products other than as directed by GlobalTap.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

137.     The oral agreement was modified later. The modification allowed Petersen to market and distribute GlobalTap products to other potential customers. Petersen, however, was required to pay GlobalTap fifty percent of the revenue for any units it sold directly, to obtain GlobalTap consent before entering into any contracts with distributors, to include GlobalTap in the agreements with any distributors, and to provide GlobalTap an accounting of all units Petersen sold.

**ANSWER:**     The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

138.    Petersen did not have an absolute license to manufacture and sell GlobalTap products.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

139.    Petersen breached the oral contract by manufacturing and selling GlobalTap products without authorization to unauthorized distributors. Petersen further breached the oral contract by failing to pay GlobalTap any royalty for units sold by Petersen and failing to provide GlobalTap an accounting of units sold.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

140.    GlobalTap is unaware of the number of units sold, or even of all the distributors to which Petersen has sold products. It has, however, identified several through its own research, including Grainger.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

141.    Petersen also breached the oral contract by failing to perform on the two- year warranty, despite numerous claims and complaints being received on products manufactured by Petersen.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

142.    Petersen further breached the oral contract by refusing to fill orders placed by GlobalTap.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

143.    GlobalTap fully performed all of its obligations under the contract, including all conditions precedent.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

144.    GlobalTap has suffered damages as a result of Petersen's breach, including lost royalty revenue, lost business opportunities, and reputational harm.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

302394823v2 1012263

145.    GlobalTap's brand and reputation, in particular, have been damaged by Petersen's unauthorized production of products purporting to be GlobalTap products and incorporating GlobalTap's Word Mark and Water Drop Mark but failing to meet GlobalTap's specifications. Petersen compounds the issue by failing to respond to or address customer complaints or claims submitted under the two-year manufacturer's warranty.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

146.    GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

## COUNT IX – TORTIOUS INTERFERENCE
### (PETERSEN)

147.    GlobalTap incorporates by reference the allegations in paragraphs 1 through 73 as though fully set forth herein.

**ANSWER:**    The Petersen Defendants adopt and incorporate their answers to

paragraphs 1 through 73 above as and for their answer to paragraph 147.

148.    GlobalTap had a reasonable expectation that it would derive benefit from selling its products to a variety of distributors. An interest in the marketplace existed for GlobalTap's products, as evidenced by Petersen's ability to sell such products behind GlobalTap's back.

**ANSWER:**    The Petersen Defendants lack knowledge or information sufficient to form

a belief about the truth of the allegations in this paragraph.

149.    Petersen knew GlobalTap expected to sell its products and to receive revenue from such sales, including sales to companies such as Grainger, Zoro, Careforde, Neobits, and Park n' Pool, among others. Petersen possessed this knowledge based upon its conversations with GlobalTap and GlobalTap's decision to hire Petersen as its exclusive manufacturer.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.

150.    Petersen intentionally interfered with GlobalTap's expectations by selling to various distributors, including Grainger, Zoro, Careforde, Neobits, and Park n' Pool, among others, behind GlobalTap's back and depriving GlobalTap of any value resulting from such sales.

Petersen further interfered with GlobalTap's expectations by refusing to disclose the names of distributors with whom Petersen contracted, thereby preventing GlobalTap from contacting the distributors directly.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.


151.    Petersen prevented GlobalTap from selling its products to other distributors by refusing to fulfill orders placed by GlobalTap. To the extent Petersen did provide any product, it was of poor quality.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.


152.    As a direct and proximate result, GlobalTap has been unable to capitalize on its products and its intellectual property to maintain or develop relationships with distributors from whom GlobalTap reasonably expected to receive revenue.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.


153.    GlobalTap presently lacks the ability to fully understand the scope of its damages because Petersen has withheld and refused to disclose to GlobalTap the total number of units it manufactured, the total number it sold, to whom the units were sold, and the price at which the units were sold, along with other significant information.

**ANSWER:**    The Petersen Defendants deny the allegations in this paragraph.


## **AFFIRMATIVE DEFENSES**

The Petersen Defendants assert the following affirmative defenses:


1.    GlobalTap's claims under the Lanham Act are barred because GlobalTap licensed, authorized, consented to, acquiesced in and ratified any and all sales by PMC of products that were offered in connection with the asserted GlobalTap trade name or trademarks.


2.    GlobalTap's claims under the patent laws are barred because GlobalTap licensed, authorized, consented to, acquiesced in and ratified any and all sales by PMC of products that included any designs covered by the claims of the '394 and/or '348 patents.

302394823v2 1012263

3. The '394 and '348 Patents are invalid for failure to satisfy the conditions of patentability under 35 U.S.C. §§102 and/or 103.

4. On information and belief, the '394 and '348 Patents are invalid because GlobalTap offered for sale a product substantially similar, if not identical, in design to that claimed in the '394 and '348 patents at least as early as July 2009, more than one (1) year before the application date of the '348 patent.

5. On information and belief, the '394 and '348 patents are invalid because GlobalTap improperly, knowingly and with deceptive intent, filed the applications therefor with improper inventorship identified therein. Specifically, one or more PMC employees materially contributed to the designs claimed in the asserted patents. GlobalTap was aware of this, yet failed to identify either PMC or the PMC employees who contributed to the claimed designs.

6. In the event that GlobalTap is able to correct the inventorship of the '394 and '348 patents to add PMC or the PMC employees who are inventors, then GlobalTap lacks standing to bring an action for infringement of the '394 and '348 patents, because it lacks complete ownership of the patents. Those PMC employees have an obligation to assign their patent rights to PMC, so PMC would be a co-owner of the asserted patents. As a co-owner, GlobalTap would lack standing to sue for patent infringement PMC and those who sold accused products under its authority.

7. GlobalTap is not entitled to any damages for alleged patent infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice to Defendants that their actions would allegedly infringe the '394 and/or '348 patents.

8.    The asserted trademarks are invalid and cannot be infringed upon because GlobalTap has abandoned any rights it may have had in the asserted trademarks by entering into a naked license for the trademarks. Specifically, GlobalTap licensed the asserted trademarks, with no right to exercise any quality control over the use of the trademarks. Such naked licensing amounts to an abandonment of GlobalTap's rights in the asserted trademarks, and renders the trademarks invalid.

9.    GlobalTap's claims are barred by the applicable statutes of limitations and repose.

10.    GlobalTap's claims are barred by the equitable doctrines of laches, equitable estoppel and unclean hands.

11.    Plaintiffs' tortious interference claims fail to state a claim for which relief can be granted.

12.    GlobalTap breached its obligations under its oral agreement with PMC, by failing to pay sums owed to PMC.

13.    GlobalTap's failure to fulfill its obligations under the parties' agreement prevented PMC from performing its obligations under their agreement.

14.    The Petersen Defendants are entitled to a setoff or offset for any amounts owed by GlobalTap to PMC.

WHEREFORE, the Petersen Defendants pray that GlobalTap's claims against them be dismissed, that judgment be entered in favor of the Petersen Defendants and against GlobalTap and that the Petersen Defendants be awarded their attorney's fees and costs.

302394823v2 1012263

## COUNTERCLAIM

Defendant Petersen Manufacturing Co. Inc. (PMC) for its Counterclaim against Plaintiff GlobalTap, states as follows:

1.      In 2010, GlobalTap and PMC entered into an oral agreement pursuant to which PMC agreed to design and manufacture certain fountains to be sold to third parties and GlobalTap authorized PMC to do so.  As part of this agreement, PMC and GlobalTap agreed that PMC would invoice GlobalTap for each of the fountains sold and GlobalTap agreed to pay these invoices within 30 days.  GlobalTap also agreed to pay for half of any costs that PMC incurred to obtain certification from Underwriters' laboratories for the fountains being sold.

2.      Pursuant to the oral agreement between GlobalTap and PMC, PMC manufactured and shipped fountains to various customers and invoiced GlobalTap for the fountains plus freight charges.  GlobalTap was required to pay these invoices within 30 days.  While Globaltap paid some invoices, GlobalTap failed to pay many other invoices.

3.      PMC performed all of its obligations under the oral agreement with GlobalTap.

4.      GlobalTap failed to perform its obligations under the oral agreement with PMC by failing to pay the invoices and amounts due to PMC.

5.      GlobalTap's failure to pay the sums due to PMC constitute a breach of the oral agreement between GlobalTap and PMC.

6.      Between July 2015 and December 2017, PMC invoiced GlobalTap the total sum of $34,819.33 net of credits for commissions.  Other than payments in the amount of $2,418.00, GlobalTap failed to pay these invoices.  As of the end of calendar year 2017, the amount due and owing from GlobalTap to PMC is $32,310.33, plus pre-judgment interest and costs.

7.      During the first 8 months of 2018, because GlobalTap was not paying the amounts it owed to PMC, PMC sold some fountains directly to certain customers and invoiced the

302394823v2 1012263

customers directly for these fountains. Upon receipt of payment from the customer, PMC gave GlobalTap a commission on the sale in the form of a credit applied to the amounts GlobalTap owed to PMC. GlobalTap verbally agreed to this arrangement. As a result if this arrangement, GlobalTap is entitled to credits of about $16,000 on the amounts it owes to PMC. The net amount owed to PMC is therefore about $16,240.00.

8.      As a direct and proximate result of GlobalTap's breach of the oral agreement referred to in this Counterclaim, PMC has suffered damages in the amount of at least $16,240.00 plus pre-judgment interest and costs.

9.      PMC is entitled to recover pre-judgment interest at a rate of 5% per annum pursuant to the Illinois Interest Act.

10.     PMC is also entitled to recover its costs to bring this counterclaim.

WHEREFORE, PMC prays that judgment be entered in its favor and against GlobalTap for the sum of at least $16,240.00 plus pre-judgement interest and costs.

Respectfully Submitted

PETERSEN MANUFACTURING COMPANY INC., CHRIS PETERSEN, AND MIKE SIEMER

By: __/s/ Peter D. Sullivan__
        One of their attorneys

Peter D. Sullivan
Terrance P. McAvoy
Mark K. Suri
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL  60606
312-704-3000
Firm No. 90384
psullivan@hinshawlaw.com
tmcavoy@hinshawlaw.com
msuri@hinshawlaw.com
*Attorneys for Defendants*

302394823v2 1012263

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **September 17, 2018**, I electronically filed the above ***Petersen Answer and Affirmative Defenses and Counterclaim*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

*/s/ Peter D. Sullivan*