## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GLOBALTAP, LLC, | |
| Plaintiff, | |
| v. | Case No. 1:18-cv-05383 |
| PETERSEN MANUFACTURING CO., INC., et al., | Hon. Charles R. Norgle |
| Defendants. | |

## ORDER

Plaintiff's agreed motion to modify the briefing schedule set for Defendants' motion for sanctions [70] and Defendants' agreed motion to modify deadline for the reply brief for Defendants' motion for sanctions [73] are granted. Defendants' motion for sanctions [67] [68] and motion for additional sanctions [79] are granted. Plaintiff's complaint is dismissed with prejudice. The Court relinquishes jurisdiction over Defendant Peterson Manufacturing Co., Inc.'s counterclaim. The Clerk is instructed to terminate this case.

## MEMORANDUM OPINION

Plaintiff, GlobalTap, LLC has repeatedly failed to comply with the Court's orders

compelling it to comply with its discovery obligations and has engaged in other misconduct

throughout discovery in this case. Though dismissing GlobalTap's complaint is a severe sanction

for its discovery misconduct, doing so is appropriate under the circumstances of this case.

### I. BACKGROUND

GlobalTap filed this case against Defendants Petersen Manufacturing Co., Inc.; Chris

Peterson; Mike Siemer;[1] W.W. Grainger, Inc.; Zoro Tools, Inc.; Park n' Pool, Inc.; Neobits, Inc.;

---

[1] Plaintiff alleges that Chris Petersen is the president and Mike Siemer is a vice president of Petersen Manufacturing. Dkt. 1 at ¶¶ 13-14. Where necessary, the Court will refer to Petersen Manufacturing, Chris Petersen, and Mike Siemer collectively as the Petersen Defendants.

and Careforde Safety, Inc. for patent infringement, trademark infringement, breach of a confidentiality agreement, breach of an oral contract, and tortious interference. Dkt. 1. GlobalTap's claims arose out of GlobalTap's retention of Petersen to manufacture its patented design for a water bottle filling station.

According to GlobalTap's complaint, at the outset, Petersen signed a confidentiality agreement under which it agreed not to use GlobalTap's prototypes and designs without GlobalTap's consent. Dkt. 1 at ¶¶ 32-33. GlobalTap and Petersen eventually entered into an oral contract for Petersen to manufacture GlobalTap's products. Dkt. 1 at ¶ 35. The initial terms of the oral contract included Petersen would be GlobalTap's exclusive manufacturer, GlobalTap would pay Petersen up front for each unit manufactured, GlobalTap would sell the units for twice the amount charged by Petersen, and Petersen would provide a two-year warranty for each unit. Dkt. 1 at ¶¶ 35-36. Later still, GlobalTap agreed to permit Petersen to sell GlobalTap's products directly to Petersen's existing customers so long as Petersen did not advertise GlobalTap's products, GlobalTap would receive 50% of all profits from Petersen's sales of GlobalTap products, Petersen would provide GlobalTap an accounting of all units sold, and GlobalTap would be included in any contract with distributors and provided an opportunity to review the terms. Dkt. 1 at ¶ 38. GlobalTap also demanded that manuals for any GlobalTap products that Petersen sold must include GlobalTap's name and contact information, not Petersen's. Dkt. 1 at ¶ 39.

GlobalTap alleges that its relationship with Petersen began to sour after customers began to complain about manufacturing defects like rusting or missing parts, scratches, and sticking buttons. Dkt. 1 at ¶ 41. GlobalTap also alleges that Petersen failed to follow through with its agreement to provide a two-year warranty. Dkt. 1 at ¶ 43. Further, GlobalTap heard through industry sources that Petersen was selling GlobalTap's products without GlobalTap's consent and

2

without paying GlobalTap its share. Dkt. 1 at ¶ 45. According to GlobalTap's complaint, Petersen ultimately stopped fulfilling orders placed by GlobalTap but continued marketing and selling GlobalTap products to major distributors, including Defendants Grainger, Park n' Pool, Zoro, Neobits, and Careforde. Dkt. 1 at ¶¶ 49-62.

Soon after GlobalTap filed its complaint, the parties resolved GlobalTap's motion for preliminary injunction and expedited discovery by stipulation. Dkt. 15. GlobalTap also agreed to stay the case as against Grainger and Zoro, Dkt. 21, and voluntarily dismissed Neobits, Dkt. 23, and Careforde, Dkt. 34. The Petersen Defendants filed an answer, affirmative defenses, and a counterclaim against GlobalTap for breach of the oral agreement. Dkt. 20. Park n' Pool similarly filed an answer and affirmative defenses. Dkt. 36.

The parties thereafter began fact discovery but also agreed to and requested a referral to a Magistrate Judge for a settlement conference, Dkt. 43, which the court granted, Dkt. 44. However, the Magistrate Judge closed the referral after the settlement conference because the parties were "too far apart to reach a settlement agreement." Dkt. 48. On July 23, 2019, after the referral but before the settlement conference failed, Petersen served on GlobalTap a Third Request to Plaintiff for Production of Documents. Dkt. 50 at 1-6. Petersen's Third Request for Documents sought from GlobalTap documents and communications with Jeff Grindle. Dkt. 50 at 4-5. Grindle is a former Petersen employee who GlobalTap identified as a witness in its initial disclosures. Dkt. 49 at 2.

GlobalTap did not respond to Petersen's document requests regarding Grindle before the settlement conference. Ibid. GlobalTap also failed to respond to an email from Petersen's counsel about the document requests after the settlement conference. Ibid. On October 22, 2019, Defendants' counsel sent GlobalTap's counsel a letter identifying four discovery issues: GlobalTap's failure to respond to Petersen's document requests regarding Grindle; GlobalTap's

production of unintelligible and corrupted documents; GlobalTap's failure to produce documents relating to its assertions of infringement against third parties; and GlobalTap's failure to produce financial statements for 2014-2018. Ibid. About a week later, Defendants' counsel left a voicemail for GlobalTap's counsel about the letter but received no response. Ibid. Defendants' counsel requested a "meet and confer" by email on October 31, 2019 in response to which GlobalTap's counsel responded on November 4, 2019 promising a response by the next day. Ibid.

At the end of the day on November 5, 2019, Defendants' counsel had not received a response from GlobalTap's counsel, so Defendants filed a motion to compel GlobalTap to produce all documents responsive to its requests regarding Grindle, to reproduce documents that Defendants identified as unintelligible or corrupted, to produce documents relating to GlobalTap's assertions of patent infringement against third parties, and to produce financial statements for 2014-2018. Dkt. 49. Defendants presented the motion to compel to the Court on November 8, 2019 and, after holding a hearing on the motion, the Court granted Defendants' motion to compel and ordered GlobalTap to comply within 28 days. Dkt. 52.

Though the Court's order granting Defendants' motion to compel required GlobalTap to comply by December 6, 2019, GlobalTap responded to those issues by letter on December 13, 2019. Dkt. 61-1. GlobalTap produced "some additional financial documents," apparently resolving Defendants' request for GlobalTap's 2014-2018 financial statements. Dkt. 61-1. As to the unintelligible or corrupted documents, GlobalTap's counsel explained that those documents were copied by a document service company from two computers, one of which was no longer functioning, and argued that GlobalTap did not have possession, custody, or control of readable copies of those documents. Ibid. GlobalTap's counsel further produced a privilege log identifying two settlement agreements that GlobalTap's counsel claimed could not be produced without

4

violating confidentiality agreements. Ibid. While GlobalTap's counsel noted her objection to producing the agreements on relevance grounds, she represented that she would provide notice to the other party to one of the settlement agreements so that in the event GlobalTap was ordered to produce it, the process would be done. Ibid. As to the other settlement agreement, GlobalTap's counsel similarly asserted that producing it would require a court order as well as notice of the order and an opportunity to object to it to the other party to the settlement agreement. Ibid. GlobalTap's counsel also represented that she had requested copies of demand letters sent on behalf of GlobalTap as well as responses to those letters. Ibid. GlobalTap's counsel represented that she would receive them and produce them the following week. Ibid. GlobalTap's counsel concluded that there were no other responsive documents in GlobalTap's possession, custody, or control. Ibid.

On May 11, 2020, Defendants' counsel sent a letter to GlobalTap's counsel again requesting production of documents required by the Court's order granting Defendants' motion to compel. Dkt. 61-3. Specifically, Defendants' counsel requested the demand letters and responses previously promised by GlobalTap's counsel; the settlement agreements mentioned above on the ground that they involve a design patent asserted in this case and could be produced confidentially; legible copies of illegible or corrupted documents; and documents and communications regarding Grindle. Ibid. As to documents regarding Grindle, Defendants' counsel acknowledged that GlobalTap's responses to those document requests claimed that all responsive documents in GlobalTap's possession, custody, or control were previously produced, but challenged the responses' credibiilty. Ibid. Defendants' counsel explained that GlobalTap had produced an affidavit by Grindle that was dated May 7, 2019 and contained the caption for this case, but that GlobalTap had not produced any other documents or communications related to that affidavit. Ibid.

Defendants' counsel also requested legible copies of additional documents produced in an illegible format as well as a log of redactions in certain produced documents with a summary of redacted material and explanations for the redactions. Ibid.

GlobalTap's counsel responded on May 15, 2020 that she expected to have answers to those questions the following week. Dkt. 61-4 at 3. GlobalTap's counsel, however, apparently did not provide answers as promised because, on July 2, 2020, Defendants' counsel emailed GlobalTap's counsel a "courtesy reminder" to respond to the May 11, 2020 letter. Id. at 2. Having not received a response by the end of the day on July 6, 2020, Defendants' counsel emailed GlobalTap's counsel again to add a request the GlobalTap supplement its initial disclosures to provide contact information for everyone identified as likely to have discoverable information and to request a "meet and confer" on July 8, 2020. Ibid. GlobalTap's counsel again failed to respond so Defendants filed a second motion to compel on July 15, 2020. Dkt. 61. Defendants' second motion sought to compel GlobalTap, for a second time, to produce documents responsive to its request regarding Grindle, to reproduce certain unintelligible or corrupted documents, and to produce documents relating to GlobalTap's assertions of patent infringement against third parties. Id. at 3-5. Defendants' second motion to compel also requested that GlobalTap be compelled to produce additional illegible documents, to produce a log of redactions in produced documents with a summary of redacted material and explanations for the redactions, and to supplement its disclosures contact information for individuals it identified as likely to have discoverable information. Id. at 5-7. Defendants' second motion further requested reasonable attorney fees "for having to bring two motions to compel and because GlobalTap has twice not participated in meet and confers." Id. at 7.

6

The Court granted Defendants' second motion to compel on July 16, 2020, requiring, taking into consideration the ongoing COVID-19 pandemic, that GlobalTap comply by September 8, 2020. Dkt. 64. The Court, however, denied Defendants' request for attorney fees, but admonished GlobalTap that failure to comply with the Court's order granting Defendants' second motion to compel may result in sanctions. Ibid.

With a letter from GlobalTap's counsel dated September 8, 2020, GlobalTap supplemented its responses and production, but only partially from Defendants' perspective. Defendants' counsel detailed the issues that persisted in an October 14, 2020 email, requesting a response by October 21, as well as availability for a meet and confer. Dkt. 68-3. Defendants' counsel first claimed that GlobalTap had not complied with the Court's previous orders requiring GlobalTap to produce documents related to its assertions of infringement against third parties. Ibid. Defendants' counsel noted that GlobalTap had not produced any responses to the demand letters it produced, or any follow-up correspondence, despite one of those demand letters resulting in a settlement agreement. Ibid.

Second, Defendants' counsel reiterated concern with GlobalTap's claim that it produced all documents and communications relating to Grindle. Ibid. Defendants' counsel explained that despite GlobalTap's claim, Grindle produced drafts of his affidavit and correspondence with GlobalTap's counsel and Daniel Whitman, GlobalTap's founder and sole member, leading Defendants' counsel to believe GlobalTap was withholding responsive documents. Ibid. Defendants' counsel also raised several issues with Grindle's subpoena responses, including that attachments to produced emails were either not produced or were produced out of order, that produced documents were redacted without production of a redaction or privilege log, and that many produced documents were improperly designated as confidential. Ibid.

7

Third, Defendants' counsel asserted that GlobalTap's court-ordered privilege log improperly failed to summarize the subject matter of the purportedly privileged letters and emails. Ibid. Fourth, Defendants' counsel claimed that GlobalTap improperly redacted the entirety of two letters from GlobalTap's patent counsel on an assertion of attorney-client privilege that Defendants' counsel asserted GlobalTap had waived by producing several other communications from GlobalTap's patent counsel in this and other litigation. Ibid. And fifth, Defendants' counsel again noted that GlobalTap had not produced an email attachment in a native, legible format. Ibid. Defendants' counsel also raised one new discovery issue: that GlobalTap identified two individuals in its supplemental disclosures without identifying what discoverable information they might have. Ibid.

Defendants' counsel's October 14, 2020 email was met with an immediate automatic reply from GlobalTap's lead counsel, stating that she was "currently away from the office with limited access to my emails," identifying three individuals to contact for immediate assistance, and concluding, "[o]therwise, I will respond to your email at my earliest convenience." Dkt. 68-4. Defendants' counsel received no other response before filing Defendants' motion for sanctions on November 16, 2020. Dkt. 68 at 4. According to GlobalTap's lead counsel, her failure to respond to Defendants' counsel's October 14, 2020 email was the result of a family emergency that began on October 7, 2020 and required her to travel to Colorado for "almost two weeks" where she indeed had limited access to internet and email. Dkt. 71 at 1-2. GlobalTap's lead counsel claims that by the time she returned, made it through her backlog of emails, and discovered Defendants' counsel's October 14, 2020 email, Defendants' motion for sanctions had already been filed. Id. at 2-3. However, GlobalTap's lead counsel acknowledges that an associate at the firm was copied on

Defendants' counsel's October 14, 2020 email, but claims the associate "did not yet know anything about the case so she sent it to staff to forward to the appropriate partners." Id. at 2.

Discovery proceeded even after Defendants filed their motion for sanctions. The parties' discovery disputes continued too. On Friday, March 5, 2021, Defendants' counsel served by email on GlobalTap's counsel a notice of a Rule 30(b)(6) deposition of GlobalTap's designated representative. Dkt. 79-3 at 2. Defendants' counsel also requested the availability of GlobalTap's counsel the following week to meet and confer on the matters for examination as required by a recent amendment to Rule 30(b)(6) that went into effect in December 2020. Ibid. GlobalTap's counsel promptly responded the following day that she would check with her client and follow up with her availability for the coming week. Id. at 5. Having heard nothing from GlobalTap's counsel by the following Friday, March 12, 2021, Defendants' counsel sent another email to GlobalTap's counsel again seeking to schedule a conference on the Rule 30(b)(6) notice or, alternatively, asking to dispense with the conference if GlobalTap had no objections. Id. at 4. GlobalTap's counsel promptly replied that she was available the following Tuesday or Thursday, and counsel arrived at an agreement to confer on the Rule 30(b)(6) notice at 1:30 p.m. on Tuesday, March 16, 2021. Id. at 3-4.

The conference apparently occurred on Wednesday, March 17, during which GlobalTap raised no objections to the deposition topics, and the parties agreed to set the deposition for April 22, 2021 at the suggestion of GlobalTap's counsel. Id. at 8, 11. But on April 9, 2021, GlobalTap's counsel requested to reschedule the deposition to late May. Id. at 9. Despite Defendants' counsel's frustration with moving the deposition, in an email on April 16, 2021, Defendants' counsel agreed to accommodate GlobalTap's counsel's request if the deposition occurred during the week of May 17, 2021. Id. at 12. Having not received a response, Defendants' counsel sent GlobalTap's counsel

another email on April 21, 2021 to confirm that the deposition would not proceed the next day as originally planned and again requested that GlobalTap's counsel provide a date during the week of May 17 for the deposition to proceed. Id. at 11. GlobalTap's counsel responded tersely, "May 20" and Defendants' counsel agreed, specifying that the deposition would begin at 9:00 a.m. Id. at 10.

The deposition occurred as rescheduled on May 20, 2021 with Whitman, GlobalTap's founder, CEO, and sole member, testifying as GlobalTap's designated representative. Dkt. 79-2. The deposition was contentious. Whitman testified he received and reviewed the deposition notice and the 18 topics described therein and that, in preparation for the deposition, he "read over the Complaint and other filings and that's about it." Id. at 4-5.[2] Whitman did not ask any other people who were involved in the subject matter of this case about any relevant facts. Id. at 5. Most of the topics described in the deposition notice included a request to identify documents that pertained to the subject matter. Ibid. Though Whitman testified that he reviewed the documents produced in discovery, Whitman struggled to identify specific documents that pertained to each topic when asked to do so by Defendants' counsel. E.g., id. at 5-7, 9, 10, 11-12, 14, 19-20, 31-32, 33-34, 36-37, 39, 41, 42, 44, 48, 51-52, 56, 66, 67-68, 72, 78, 82-83. Defendants' counsel also repeatedly asked the court reporter to reread questions posed to Whitman and requested that Whitman provide a responsive answer. E.g., id. at 22, 24, 25, 26, 28, 31-32, 33, 34, 36, 48, 49, 55, 59, 64, 66, 67, 68, 79, 82. Whitman also refused to answer Defendants' counsel's questions about the factual basis for GlobalTap's claims for damages. E.g., id. at 53-56. Whitman and GlobalTap's counsel also raised vagueness objections to the topics in the deposition notice even though GlobalTap had not

---

[2] Citations to the transcript of GlobalTap's Rule 30(b)(6) deposition are to the page numbers of the document filed as docket entry 79-2.

10

previously raised any such objections. E.g., id. at 40, 60, 65-66, 72. Though many substantive topics were also covered during the deposition, Defendants' counsel ultimately suspended the deposition on the basis that Whitman was not properly prepared and reserved the right to retake the deposition. Id. at 83. Defendants filed an additional motion for sanctions relating to the Rule 30(b)(6) deposition of Whitman on June 16, 2021. Dkt. 79. Thus, now before the Court are Defendants' motion for sanctions relating to GlobalTap's conduct during written discovery, Dkt. 67, 68, as well as Defendants' additional motion for sanctions relating to Whitman's Rule 30(b)(6) deposition, Dkt. 79.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) allows courts to enter "just orders" if a party or a witness designated under Rule 30(b)(6) "fails to obey an order to provide or permit discovery," including prohibiting the party from "supporting or opposing designated claims or defenses," striking pleadings, staying proceedings, dismissing the action, or entering a default judgment. Fed. R. Civ. P. 37(b)(2)(A). A court also has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016).

Where sanctions are appropriate, the court must ensure they are proportional to the circumstances. Donelson v. Hardy, 931 F.3d 565, 569 (7th Cir. 2019). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." Ramirez, 845 F.3d at 776. Though "Rule 37 itself does not specify a requisite mental state," dismissal of an action under Rule 37 is not appropriate when a plaintiff's failure to comply with discovery

obligations is due to an inability to comply rather than a "'willfulness, bad faith, or any fault.'" Ibid. (quoting Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212 (1958)). Unlike willfulness or bad faith, fault under Rule 37 "does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" Ibid. (quoting Marrocco v. Gen. Motors Corp., 966 F.2d 220, 224 (7th Cir. 1992)).

### III. ANALYSIS

GlobalTap's and its counsel's conduct may not in any single instance rise to the level of, for example, perjury that warrants dismissal by itself. Taken together, however, GlobalTap's and its counsel's conduct during discovery in this case reveals that it has litigated in bad faith and exhibited extraordinarily poor judgment and gross negligence. GlobalTap has repeatedly failed to assert its interests diligently, or to respond timely to Defendants' counsel's communications and requests even to meet and confer regarding discovery issues. More specifically, GlobalTap repeatedly failed to comply with its obligations in response to Defendants' requests for documents and communications related to Grindle, including to produce responsive documents and, more fundamentally, to conduct a reasonable search for responsive documents. GlobalTap also repeatedly failed to comply with its obligations in response to Defendants' request for documents relating to GlobalTap's assertions of patent infringement against third parties. Further, GlobalTap's court-ordered redaction and privilege log remains deficient by failing to justify its claims of privilege or to summarize the subject matter of the redacted material or withheld documents. Tellingly, GlobalTap's response to Defendants' motion for sanctions represented that GlobalTap would produce an updated privilege log by the end of the week that the response was filed. But GlobalTap failed to produce an updated privilege log at the time that Defendants' counsel

filed its reply three weeks after GlobalTap's response. And with the ink hardly dry on Defendants' motion for sanctions, GlobalTap's designated representative appeared at a Rule 30(b)(6) deposition unprepared to testify meaningfully as to the topics included in the deposition notice, including even only the most important documents that support GlobalTap's claims as well as fundamental aspects of GlobalTap's claims like the damages GlobalTap seeks to recover.

GlobalTap's disregard for its obligations in discovery and the Court's discovery orders deserve sanctions. And the extended, sustained, and repeated nature of GlobalTap's misconduct renders dismissal of GlobalTap's complaint with prejudice appropriate under the circumstances.

**A. GlobalTap repeatedly failed to comply with its obligation and the Court's orders to produce documents responsive to Defendants' discovery requests for documents and communications regarding Grindle.**

In its initial disclosures, GlobalTap identified Grindle, a former employee of Petersen, as a witness. Dkt. 49 at 2. As a result, on July 23, 2019, Petersen issued to GlobalTap a third request for production of documents, which requested, over several discrete requests, essentially all of GlobalTap's documents and communications related to Grindle. Dkt. 50 at 1-6. After receiving no response to the request by November 5, 2019, Defendants' first motion to compel sought an order compelling GlobalTap to produce all responsive documents, Dkt. 49, which the Court granted, Dkt. 52. In its response to Defendants' motion for sanctions, GlobalTap explains it failed to respond to the request initially because "the request was not properly docketed when it came into the office and counsel had not seen it when the first motion to compel was filed." Dkt. 71 at 4. But GlobalTap's explanation does not hold up to even the softest scrutiny. It ignores that Defendants' counsel's October 2, 2019 email to GlobalTap's counsel inquiring about GlobalTap's delinquent responses that were due on August 22, to which GlobalTap did not respond. Dkt. 49 at 2. It ignores Defendants' counsel's October 22, 2019 letter to GlobalTap's counsel, to which GlobalTap did

13

not respond. Ibid.; Dkt. 50 at 7-8. It ignores Defendants' counsel's October 30, 2019 voicemail regarding the October 22, 2019 letter, to which GlobalTap did not respond. Dkt. 49 at 2. And it ignores Defendants' counsel's October 31, 2019 email requesting a meet and confer, in response to which GlobalTap's counsel tersely responded with a promise that responses to Petersen's requests would be served on November 5, 2019, though GlobalTap did not keep that promise. Ibid.

Rather, GlobalTap did not serve responses to Petersen's requests until December 13, 2019, Dkt. 71 at 4, more than a month after the Court granted Defendants' first motion to compel. And GlobalTap's responses proved to be unjustifiably deficient. GlobalTap produced only an affidavit signed by Grindle, dated May 7, 2019, and bearing the caption of this case. Dkt. 61 at 3; Dkt. 61-5. GlobalTap's response to Petersen's document requests as to Grindle merely repeated, "All responsive documents in Plaintiff's possession, custody, or control were previously produced," Dkt. 61-2, presumably in reference only to Grindle's affidavit. That response led to more attempts by Defendants' counsel to request supplemental responses given Defendants' counsel's understandable skepticism that the only document GlobalTap possessed related to Grindle was his affidavit that was prepared during and for this litigation. Defendants' counsel sent a letter to GlobalTap's counsel on May 11, 2020 identifying that issue among others, Dkt. 61-3, to which GlobalTap's counsel responded on May 15, 2020, "Expect to have answers on your open document questions next week," Dkt. 61-4 at 3. GlobalTap's counsel did not respond to the substance of the issues within the predicted timeframe, so Defendants' counsel sent a follow-up email on July 2, 2020. Id. at 2. GlobalTap's counsel did not respond to Defendants' counsel's follow-up email or to Defendant's counsel's second follow-up email on July 6, 2020, which included a meet and confer on July 8, 2020. Ibid.; Dkt. 61 at 3. So Defendants filed a second motion to compel on July 15, 2020, Dkt. 61, which the Court granted on July 16, 2020, Dkt. 64.

GlobalTap contends that when the Court granted Defendants' second motion to compel and ordered GlobalTap to produce documents related to Grindle, GlobalTap and its counsel "believed they had already done so." Dkt. 71 at 4. Accordingly, GlobalTap's counsel responded that it had "no responsive documents relating to the affidavit signed by Mr. Grindle" and "All other responsive documents were previously produced." Dkt. 68-1 at 3-4. But GlobalTap's counsel's belief and responses proved incorrect and unreasonable. In July 2020 Defendants issued a subpoena to Grindle. Dkt. 71 at 5. In August 2020, Grindle, purportedly represented by GlobalTap's counsel, produced communications between, among others, Grindle, Whitman (Global's founder, CEO, sole member, and designated representative), and GlobalTap's counsel from as early as October 2013 and as recent as May 2019. Dkt. 66-5, 66-6, 66-7, 66-8, 68 at 6. And Grindle's production itself was deficient, failing to produce documents attached to emails and redacting communications without providing a redaction or privilege log. Dkt. 68 at 6. Defendants' counsel raised those issues in an October 14, 2020 email to GlobalTap's counsel, but Global Tap did not respond. Ibid.

Considering that production, GlobalTap claims in its response to Defendants' motion for sanctions that Whitman "undertook some additional searching for communications but has not located any responsive documents." Dkt. 71 at 5. But GlobalTap provides no detail as to what that "additional searching" consisted of, and that unsworn statement by GlobalTap's counsel does not establish that GlobalTap performed a diligent and reasonable search for responsive documents. See Nelson v. Shultz, 878 F.3d 236, 238-240 (7th Cir. 2017) (affirming dismissal of case for plaintiff's failure to cooperate in discovery and pattern of dilatory conduct). Notably, the documents produced by Grindle included emails between Grindle and Whitman as well as between Grindle and GlobalTap's counsel from April and May 2019, just months before Petersen issued its

15

request to GlobalTap for documents and communications related to Grindle in July 2019. Dkt. 66-5, 66-6. GlobalTap's response to Defendants' sanctions motion also engages a strawman argument, claiming that GlobalTap's counsel did not consider her communications with Grindle in connection with her representation of Grindle responsive to Petersen's requests and that such communications are protected from disclosure by the attorney-client privilege. Dkt. 71 at 6. That may be so, but Defendants never requested those communications.

GlobalTap concedes that its counsel did not represent Grindle during preparation of his affidavit, in which Whitman and GlobalTap's counsel were involved. Id. at 5. Nevertheless, GlobalTap claims that the communications between Grindle, Whitman, GlobalTap, and GlobalTap's counsel after Grindle's employment at Petersen ended are irrelevant to this case because they do not concern GlobalTap's alleged oral contract with Petersen. Id. at 6. There are at least two issues with that assertion. First, GlobalTap has raised it far too late. GlobalTap did not raise any relevance objection in its deficient response after the Court granted Defendants' first motion to compel, Dkt. 61-2, or any other time before its response to Defendants' motion for sanctions. And second, documents and communications relating to Grindle's connections to GlobalTap after his employment at Petersen ended are plainly relevant, especially considering that GlobalTap and its counsel coordinated with Grindle to create his affidavit during and for this litigation.

In sum, the Court finds that GlobalTap's repeated delays, failure to produce those documents, and representations that no such documents existed were not mere mistake or carelessness. GlobalTap's and its counsel's conduct in responding to Petersen's requests about Grindle exhibited at least extraordinarily poor judgment or gross negligence, if not outright willful misconduct and bad faith tactics.

16

**B. GlobalTap repeatedly failed to comply with its obligation and the Court's orders to produce documents responsive to Defendants' requests for documents and communications relating to GlobalTap's assertions of patent infringement against third parties.**

The pattern of misconduct described applies equally to GlobalTap's response to Petersen's request for documents related to GlobalTap's assertions of patent infringement against third parties. GlobalTap repeatedly and unreasonably delayed its responses. GlobalTap's tardy responses were incomplete, which GlobalTap fails to justify. And GlobalTap's objection to the scope of Defendants' requests for the first time in response to Defendants' sanctions motion is made in bad faith.

Petersen's second request to GlobalTap for production of documents included a request to produce essentially all documents related to GlobalTap's assertions of patent infringement against third parties. Dkt. 50 at 18-20. GlobalTap's response objected to those requests as overly broad, irrelevant, not likely to lead to relevant information, and seeking confidential settlement communications from unrelated matters. Ibid. But subject to those objections, GlobalTap responded substantively that it had produced documents and communications relating to GlobalTap's assertions of patent infringement against parties to this case as well as documents related to GlobalTap's lawsuit against Elkay. Ibid.

Defendants' first motion to compel explained that its request was relevant because GlobalTap's past assertions of patent infringement "indicate the scope of the design patent claims and responses to assertions of infringement are likely to reveal defenses to infringement." Dkt. 49 at 3-4. The Court granted Defendants' first motion to compel. Dkt. 52. In a December 13, 2019 letter from counsel for GlobalTap to Defendants' counsel, GlobalTap's counsel represented that she had requested copies of GlobalTap's demand letters, and the responses received, and that those documents would be produced the following week. Dkt. 61-1 at 3. But GlobalTap did not produce

17

any such documents, leading Defendants to raise the issue again in their second motion to compel. Dkt. 61 at 5. The Court granted Defendants' second motion to compel, which led to GlobalTap producing in September 2020 demand letters dated January 16, 2019 from its patent counsel to four accused infringers as well as a settlement agreement with one of the accused infringers dated July 9, 2019. Dkt. 68 at 7; Dkt. 71 at 8. But GlobalTap produced no responses by any of the accused infringers. Dkt. 68 at 7.

GlobalTap effectively concedes that it has not produced any of the accused infringers' responses to GlobalTap's demand letters. Rather, GlobalTap claims that such documents were not within the scope of Petersen's requests. Dkt. 71 at 8-9. GlobalTap also misleadingly quotes Defendants' counsel's May 11, 2020 letter to purportedly confirm that Petersen "sought 'the documents from Morgan, Lewis & Bockius LLP.'" Dkt. 71 at 9. GlobalTap ignores that the full quote is Defendants' counsel's request that GlobalTap produce "the documents from Morgan, Lewis & Bockius LLP *promised in GlobalTap's letter of December 13, 2019.*" Dkt. 61-3 at 2 (emphasis added). And, importantly, the December 13, 2019 letter from GlobalTap's counsel stated "I have requested copies of demand letters sent by the attorneys at Morgan, Lewis & Bockius LLP, *and the responses received.* The attorney there . . . will get those to me next week *and I will produce them when I get them.*" Dkt. 61-1 at 3 (emphasis added).

GlobalTap and its counsel acknowledged as early as December 2019 that the responses from accused infringers to GlobalTap's demand letters were within the scope of Petersen's requests and GlobalTap and its counsel agreed to provide them. GlobalTap's assertion to the contrary is too late and in bad faith. And GlobalTap's failure to produce those responsive documents violate the Court's orders granting Defendants' motions to compel.

**C. GlobalTap's court-ordered redaction and privilege log was deficient by failing to justify its claims of privilege or to summarize the subject matter of the redactions or withheld documents and remains deficient despite GlobalTap's promise to produce an updated log.**

In response to Defendants' discovery requests, GlobalTap produced over 50 pages of documents with unexplained redactions and for which GlobalTap failed to provide a privilege or redaction log. Dkt. 61 at 5; Dkt. 61-11. In a May 11, 2020 letter to GlobalTap's counsel, Defendants' counsel requested a redaction or privilege log "explaining the reason for redactions and summarizing the material redacted" and informing GlobalTap's counsel that the log "should meet the requirements of a privilege log if privilege is asserted as the reason for the redaction." Dkt. 61-3 at 2. GlobalTap did not respond to that letter, nor did GlobalTap respond to emails following up on Defendants' counsel's request for a privilege log on July 2 and July 6. Dkt. 61 at 3. So Defendants included that issue in their second motion to compel, Dkt. 61 at 5-6, which the Court granted, Dkt. 64.

GlobalTap eventually produced a redaction and privilege log. Dkt. 68-11. GlobalTap's log identifies the redacted documents by "Bates Range" and provides in a column titled "Summary of Redacted Material" the type of document (emails or letters) with dates and the names of the individuals who sent and received the document. Ibid. GlobalTap's log also includes columns titled "Basis for Redaction" and "Basis for Privilege," which uniformly state, respectively, "Privileged communication" and "Attorney-Client." Ibid.

In the sanctions motion, Defendants correctly complain that the privilege log is inadequate because it does not describe the document's subject matter or specifically explain why the document is privileged or immune from discovery. Rule 26(b)(5)(A) provides, "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection . . ., the party must: (i) expressly make the claim; and (ii) describe the nature

of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). See also Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) ("descriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation'" were insufficiently detailed to allow the opposing party or the court to evaluate the claim of privilege). Contrary to GlobalTap's response to Defendants' motion for sanctions, GlobalTap's mere identification of the type and dates of the redacted communications and the individuals who sent and received the communications is not enough, even assuming that Defendants knew, as GlobalTap suggests, that one of the individuals identified was GlobalTap's patent prosecution counsel. GlobalTap's log does not provide any description whatsoever of the subject matter of the communications or any explanation why the communications are privileged.

Implicitly recognizing that GlobalTap's log is insufficient, GlobalTap's response to Defendants' sanctions motion, filed December 29, 2020, also represents, "Out of an abundance of caution, GlobalTap's counsel is preparing an updated log to include descriptions of the subject matter of the documents and the basis for the assertion of privilege . . . ." Dkt. 71 at 10. GlobalTap also belatedly represented that it would add "inadvertently produced Blanchard documents and any communications with Jeff Grindle to the log." Ibid. GlobalTap represented that its updated log would be produced by the end of the week that GlobalTap's response to Defendants' sanctions motion was filed. Ibid. But consistent with GlobalTap's pattern of dilatory conduct in this case, GlobalTap did not produce an updated log by the time Defendants filed their reply in support of their sanctions motion on January 19, 2021. Dkt. 74 at 10. And the Court has received no information that GlobalTap has ever produced an updated log. In sum, GlobalTap failed to comply

with the Court's order granting Defendants' second motion to compel and requiring in part that GlobalTap produce a log of redactions on produced documents that complies with the requirements for a privilege log. And GlobalTap's conduct, also including its belated attempt to assert that certain privileged documents were inadvertently produced, supports the Court's finding that GlobalTap's failure to comply with its discovery obligations and the Court's orders is the result not of excusable neglect or mere mistake or carelessness but because of GlobalTap's extraordinarily poor judgment, gross negligence, and willful, bad faith conduct.

**D. GlobalTap's designated representative was unprepared and refused to testify meaningfully at a Rule 30(b)(6) deposition as to the topics included in the deposition notice, including even only the most important documents that support GlobalTap's claims as well as fundamental aspects of GlobalTap's claims like the damages GlobalTap seeks to recover.**

GlobalTap's extraordinarily poor judgment, gross negligence, and willful bad faith conduct in discovery in this case continued even after Defendants' motion for sanctions was fully briefed. On March 5, 2021, Defendants' counsel served on GlobalTap's counsel by email a notice of a Rule 30(b)(6) deposition of GlobalTap's designated representative to occur on March 25, 2021. Dkt. 79 at 2. As described above, GlobalTap and its counsel continued their pattern of dilatory conduct that extended Defendants' counsel's request for a conference on the date of the deposition and matters to be addressed in the deposition, as required by a recent amendment to Rule 30(b)(6), as well as the date of the deposition itself. The conference occurred on March 17, 2021, wherein GlobalTap's counsel made no objections to the topics listed in the deposition notice and proposed that the deposition take place on April 22, 2021. Dkt. 79 at 2. GlobalTap's response to Defendants' motion for additional sanctions claims that there was no meet and confer on the scope of the deposition topics, claiming that "[t]he only subjects of discussion in the 'meet and confer' were the identity of the witness GlobalTap would be presenting to testify on its behalf, Daniel Whitman, and the date of the deposition." Dkt. 83 at 2. Perhaps. But that the only subjects discussed in the

21

pre-deposition conference were the identity of GlobalTap's designated representative and the date of the deposition does not mean that GlobalTap's counsel could not have raised any objections to the topics listed in the deposition notice.

Though after the conference Defendants' counsel confirmed GlobalTap's counsel's suggestion that the deposition take place on April 22, 2021, GlobalTap's counsel requested on April 9, 2021 that the deposition be reset to late May. Dkt. 79 at 2. Defendants' counsel expressed frustration but ultimately agreed and the parties reset the deposition for May 20, 2021. Id. at 3.

The deposition occurred as rescheduled on May 20, 2021. Under Rule 30(b)(6), an organization's designated representative "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The Rule 30(b)(6) testimony of a representative "represents the knowledge of the corporation, not of the individual deponents." Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc., 251 F.R.D. 534, 538 (D. Nev. 2008). And, though a Rule 30(b)(6) deposition is not designed to be a memory test, the organization subject to the deposition "has 'a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'" Id. at 539 (quoting Starlight Int'l, Inc. v. Herlihy, 186 F.R.D. 626, 639 (D. Kan. 1999)). In other words, an organization has a duty to prepare a Rule 30(b)(6) designee to the extent information is reasonably available, whether from documents, employees, or other sources. Ibid.

Whitman, as GlobalTap's founder, CEO, and sole member should have been as capable of testifying on GlobalTap's behalf as any other individual. But Whitman was not prepared or else refused to testify fully and unevasively as GlobalTap's designated representative. At the outset, Whitman testified that in preparation for the deposition, he "read over the Complaint and other

22

filings and that's about it." Dkt. 79-2 at 4-5. Whitman did not, for example, ask any other people who were involved in the subject of this case about their memories about any of the facts of this case. Id. at 5. And though Whitman testified that he reviewed the documents produced in discovery, Whitman struggled to identify specific documents that pertained to each topic when asked to do so by Defendants' counsel. E.g., id. at 5-7, 9, 10, 11-12, 14, 19-20, 31-32, 33-34, 36-37, 39, 41, 42, 44, 48, 51-52, 56, 66, 67-68, 72, 78, 82-83. While some of Defendants' counsel's questions veered close to attempting to impose a memory test on Whitman as to his ability to identify documents, Whitman nevertheless was unable or refused to identify even the most important documents related to the topics on which Defendants' counsel asked questions.

Tellingly, the deposition included a colloquy between Defendants' counsel and Whitman wherein Whitman expressed his belief that he was not allowed to bring notes or documents with him to the deposition. Dkt. 79-2 at 56-57. Defendants' counsel disavowed that position, explaining that nothing in the deposition notice precluded Whitman from bringing notes about which documents were relevant to the topics identified in the deposition notice and explicitly representing that doing so would have been appropriate. Ibid. Whitman's belief that he could not have brought any notes or documents to the deposition to aid his testimony is unsupported and Defendants' counsel's response that nothing in the deposition notice or anything else limited Whitman's ability to do so appears correct, if not routine. Moreover, Whitman also refused to answer Defendants' counsel's questions about the factual basis for GlobalTap's claims for damages. E.g., id. at 53-56.

While Whitman testified on the substance of several topics and issues, the Court's review of the entirety of the deposition transcript reveals that Whitman was not prepared to testify as GlobalTap's designated representative. "Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the

23

privilege of being able to use the corporate form in order to conduct business.'" <u>Great Am. Ins.</u> <u>Co. of N.Y.</u>, 251 F.R.D. at 540.

## IV. CONCLUSION

GlobalTap and its counsel have conducted discovery from the outset of this case in a manner exhibiting extraordinarily poor judgment, gross negligence, and willful bad faith conduct. GlobalTap also engaged in a repeated pattern of dilatory conduct. And there is precedent for GlobalTap's discovery misconduct in this case: a prior lawsuit by GlobalTap against two entities for, among other things, trade secret misappropriation, was dismissed as discovery sanctions under Rule 37 based on GlobalTap's refusal to comply with court orders to produce initial disclosures and documents responsive to discovery requests. <u>GlobalTap LLC v. SmartTap LLC</u>, No. 1:13-cv-05322, Dkt. 165 (N.D. Ill. Mar. 5, 2015).

The circumstances in this case differ somewhat, but the underlying issue—failure to comply with court orders and fundamental discovery obligations—and the ultimate result—dismissal of GlobalTap's claims—are the same. While the Court acknowledges that dismissal is a severe sanction for under Rule 37 and the Court's inherent authority, that severe sanction is warranted in this case where GlobalTap's conduct was not the result of excusable neglect or mere mistake or carelessness. Rather, GlobalTap and its counsel have repeatedly and unreasonably delayed the discovery process and otherwise exhibited extraordinarily poor judgment, gross negligence, and willful bad faith conduct. Defendants' motion for sanctions, Dkt. 67, 68, and additional motion for sanctions, Dkt. 79, are granted. However, given the severity of dismissal of the case as a sanction for GlobalTap's discovery misconduct, the Court finds that further sanctions in the form of attorney fees, as Defendants request, is inappropriate under the circumstances. <u>See</u> Fed. R. Civ. P. 37(a)(5)(A)(iii). Accordingly, GlobalTap's complaint is dismissed with prejudice

and the Court relinquishes jurisdiction over Defendant Petersen Manufacturing Co., Inc.'s counterclaim.

    IT IS SO ORDERED.

                            ENTER:

                            CHARLES RONALD NORGLE, Judge
                            United States District Court

DATE: July 29, 2021